# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PHOENIX EAST ASSOCIATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 22-0495-WS-B |
| ) | |
| WESTCHESTER SURPLUS LINES ) | |
| INSURANCE COMPANY, etc., ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 57). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 57, 60, 66, 67), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1), the defendant issued the plaintiff a policy of insurance ("the Policy") covering a condominium complex ("the Property"). The Property was damaged by Hurricane Sally in September 2020. The plaintiff made a claim on the Policy, but the defendant found that the damages fell below the Policy's deductible and made no payment on the claim. The complaint alleges that the actual amount of covered damages exceeds $6 million. Count I alleges breach of contract, while Count II alleges bad faith. The defendant seeks summary judgment as to both claims.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); accord *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); accord *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she

has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). Moreover, "a passing reference to an issue in a brief [i]s insufficient to properly raise that issue." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005). The Court accordingly limits its review to those arguments the parties have expressly and adequately advanced.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to *particular parts* of materials in the record," and "[t]he Court need consider only the cited materials …." Fed. R. Civ. P. 56(c)(1)(A), (c)(3) (emphasis added). By local rule, "[t]he movant must file a brief that includes … all facts relied upon, each supported by a *specific, pinpoint citation* to the record …." Civil Local Rule 56(a)(1) (emphasis added), and the Court need not consider factual assertions unsupported by such pinpoint citations. *Jones v. Unity Behavioral Health, LLC*, 2021 WL 5495578 at *1, *4 (11th Cir. 2021). As this Court has noted, "[t]he Court will not

scour an entire deposition transcript to seek out evidentiary support for defendant's statement." *Ivy Marine Consulting, LLC v. Monarch Energy Partners, Inc.*, 2019 WL 1173356 at *4 (S.D. Ala. 2019); *accord Foster v. Bridgestone Americas Tire Operations, LLC*, 2013 WL 1363962 at *5 n.12 (S.D. Ala. 2013).

## I. Breach of Contract.

An essential element of a claim for breach of contract is "the plaintiff['s] performance under the contract." *Childs v. Pommer*, 348 So. 3d 379, 387 (Ala. 2021) (internal quotes omitted). The defendant seeks summary judgment because the plaintiff "failed to perform under the contract in at least two respects," *viz.*, the plaintiff "failed to provide requested information and provided inadequate time to investigate the loss." (Doc. 57 at 10).

Applying the *Rachel* standard, the version of the relevant facts that the Court must accept for present purposes is as follows:

The Property was damaged by Hurricane Sally on September 16, 2020. The plaintiff gave the defendant notice of the loss one week later. The defendant assigned the claim to an independent adjusting firm ("McLarens") on September 25, 2020, and McLarens inspected the Property the following day.

On October 20, 2020, after its inspection and a review of records, McLarens emailed the plaintiff's Association Manager ("Johnson") a loss estimate of approximately $447,000, explaining that this figure fell below the applicable deductible of $570,000 and asking the plaintiff to submit any documents (such as estimates and invoices) showing actual costs so that a final determination of damages could be made. (Doc. 57 at 4; Doc. 57-10 at 2; Doc. 66 at 2).

On October 29, 2020, McLarens emailed Johnson to advise that it would close its file in 30 days if it did not receive anything further; on November 17, 2020, McLarens emailed Johnson asking if there were any additional costs that would push the loss over the deductible and asking for a response. (Doc. 57 at 4; Doc. 57-10 at 1; Doc. 66 at 2). Johnson, however, did not receive these emails. (Doc. 66-2 at 2).

4

There were no further communications between the parties or their representatives for almost ten months. On September 10, 2021, Johnson emailed McLarens' senior vice-president ("Hellman") and invoked the appraisal process. (Doc. 60-1 at 10; Doc. 66 at 4; Doc. 66-2 at 2, 10). Hellman did not respond until Johnson called him on November 12, 2021. (Doc. 66 at 4; Doc. 66-2 at 2).[1]

On more than one unidentified occasion in 2021 and 2022, Johnson left voicemails with Hellman informing him that the plaintiff was still investigating the claim and inquiring about the status of appraisal. (Doc. 66 at 5; Doc. 66-2 at 3).

On or about June 30, 2022, Johnson mailed a package of documents to the defendant, with a cover letter reiterating the plaintiff's position that its request for appraisal should be honored. (Doc. 66 at 5; Doc. 66-2 at 2-3, 12). The submitted documents included: (1) an executed proof of loss; (2) an estimate from the Howarth Group; (3) a report from RJH and Associates; (4) a report from SouthernCat; and (5) a report from Forensic Building Science. (Doc. 57-12; Doc. 66 at 5; Doc. 66-2 at 2-3). RJH and Associates provided a professional engineer to inspect and assess the building's roof. (Doc. 66 at 7; Doc. 66-1 at 2). SouthernCat developed a bid for general conditions work for the repair project. (*Id.*). Forensic Building Science was retained to inspect and assess the scope and cause of damage. (*Id.*).

On July 29, 2022, the defendant responded that the request for appraisal was premature because the defendant had been given no opportunity to review or consider the $6.1 million figure expressed in the proof of loss. (Doc. 57 at 5-6; Doc. 57-13 at 3-4; Doc. 66 at 3).

In August 2022, the defendant submitted the claim for a separate, independent review and investigation by an engineering firm and a building consultant. These

---

[1] The defendant cites an undifferentiated mass of 250 pages of deposition transcript for the proposition that, in response to the plaintiff's invocation of the appraisal process, "the insured was informed that it needed to present its valuation of the claim so this Defendant could consider it and determine whether it agreed or disagreed with the valuation." (Doc. 57 at 5). Because the defendant failed to provide pinpoint citations to the record supporting this proposition, the Court disregards it.

consultants inspected the building in late August and mid-September 2022.  (Doc. 57 at 6; Doc. 66 at 3).  The engineering firm, but not the building consultant, delivered its report in late October 2022.  (*Id*.).

The plaintiff filed suit on December 15, 2022.  (Doc. 1).  At that time, the building consultant had not delivered its report, and the defendant's investigation of the claim was ongoing.  (Doc. 57 at 6; Doc. 66 at 3; Doc. 66-8).  The building consultant's report arrived on or about January 9, 2023.  (Doc. 66 at 16; Doc. 66-4 at 6).

As noted, the defendant argues that the plaintiff breached the Policy in two respects:  by not providing requested information and by not providing the defendant adequate time to investigate the loss.  In order to prevail on motion for summary judgment, the defendant must show both that the Policy imposes these contractual obligations on the plaintiff and that, given the version of the facts set forth above, it is uncontroverted that the plaintiff failed to perform one or more of these obligations.

### A.  Failing to Provide Requested Information.

The defendant identifies two clauses addressing the provision of requested information:

> You must see that the following are done in the event of loss or damage to Covered Property:
> …
> (5)  At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.
> …
> (7)  Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

(Doc. 57 at 8; Doc. 57-1 at 23).

As to subparagraph (5), the defendant argues that the plaintiff "fail[ed] to timely provide inventories of the damaged Property, despite requests for the same."  (Doc. 57 at 9).  The defendant identifies these requests as McLarens' emails of October 20, October 29, and November 17, 2020.  (*Id*. at 11; Doc. 57-15 at 2).

6

None of these communications expressly request the plaintiff to provide "inventories." Instead, and without any reference to the Policy beyond its deductible, they ask the plaintiff: to "advise if you have any actual costs (estimates/invoices) to submit for review and consideration"; to "confirm your agreement that this loss will not pierce the applicable deductible," with a warning that "[w]e will close our file in 30 days, if we do not received [sic] anything further"; and to "advise" whether "there [are] any additional costs to claim that will push this loss over the deductible." (Doc. 57-10 at 1-2). The defendant has offered no authority or analysis to support its assumption that the emails request inventories rather than some other/lesser information, and the Court will not supply the deficiency. *See generally Ex parte Clark*, 728 So. 2d 135, 141 (Ala. 1998) (the insurer's right to require the production of documents is governed by the language of the policy, which is to be strictly construed against the insurer) (plurality opinion).

In addition, while it is uncontroverted that McLarens sent these emails, Johnson denies receiving them. Even could any of the emails be construed as requesting inventories, the defendant has not attempted to show that the plaintiff could be in breach of the Policy by failing to honor a request it did not receive. Again, the Court will not construct or support an argument on the defendant's behalf.

As to subparagraph (7), the defendant posits that, after receiving the proof of loss, it "requested additional information from Plaintiff, which Plaintiff did not provide" before filing suit. (Doc. 57 at 2). Assuming for argument that such a failure might violate the plaintiff's duties under subparagraph (7), the defendant in its statement of undisputed facts neither asserts that it made such a request nor points to any evidence that it did so.[2] Nor has it shown that the information allegedly requested extended beyond the reports that the defendant denies were submitted but that the plaintiff's evidence shows were submitted contemporaneously with the proof of loss. The defendant has therefore failed to make a threshold showing that the plaintiff violated subparagraph (7).

---

[2] If such evidence is buried within the 250 pages of deposition transcript the defendant dumped on the Court, it is to be disregarded for reasons stated previously.

The defendant repeatedly notes that the plaintiff first submitted documentation of its loss almost two years after Sally struck. (Doc. 57 at 9, 11). That is indeed a long time, but the defendant identifies no provision of the Policy or of Alabama law that required the plaintiff to submit documentation more promptly or be barred from recovery. Once again, the Court will not develop an argument for the defendant's benefit.

### B. Filing Suit Prematurely.

The defendant asserts that the plaintiff "breached the conditions of the Policy by failing to allow Defendant sufficient time to evaluate the claimed damages once [the plaintiff] finally provided the information." (Doc. 57 at 9). The defendant elaborates that the plaintiff "filed suit before Defendant had a fair opportunity to evaluate the claim." (*Id*. at 11-12).

The defendant identifies no Policy provision guaranteeing it a minimum amount of time to consider a claim before suit may be filed. Instead, it relies on the provision that "[n]o one may bring a legal action against us under this Coverage Part unless … [t]here has been full compliance with all of the terms of this Coverage Part …." (Doc. 57 at 9; Doc. 57-1 at 11). This simply begs the question of what Policy term or terms had not been fully complied with when suit was brought.

The defendant posits that it "has a contractual right to investigate the loss and reach informed conclusions as to the scope of damages." (Doc. 57 at 12). Many policies, in the Court's experience, expressly affirm the insurer's right and duty to investigate, but the defendant points to no such provision in the Policy.[3] In any event, there is a world of difference between a contractual right to investigate a loss and a contractual prohibition on filing suit before the insurer has completed an investigation it deems satisfactory. The defendant offers no authority recognizing such a prohibition under the language of this or

---

[3] The Court declines to peruse the 81-page Policy on the defendant's behalf in search of such a provision.

any other policy, and no explanation how such a bar could be teased out of a policy that contains no express prohibition.

     Instead, the defendant cites several cases for the proposition that an insurer "has a right to seek all information relating to an insured's claim so that the insurer may adequately and thoroughly investigate the claim to determine its obligations under the contract." (Doc. 57 at 12).[4] In each of the cited cases, the insurer had invoked its specific investigatory rights, as granted by policy language, and the insured's corresponding post-loss duties (to produce documents and/or to sit for examination under oath), and the insured had filed suit without complying with the insurer's requests. Under such circumstances, the insured had failed to satisfy all contractual conditions precedent to any obligation on the insurer to pay. *E.g., Nationwide Insurance Co. v. Nilsen*, 745 So. 2d 264, 267 (Ala. 1998). As noted in Part I.A, the defendant has failed to establish a violation of any Policy provision.

### C. Submitting an Amended Proof of Loss.

     On October 2, 2023, the plaintiff submitted an amended proof of loss, identifying the amount of loss as just south of $16.5 million ($10.4 million more than expressed in the initial proof of loss). (Doc. 66-5). The defendant complains that it had no pre-suit opportunity to evaluate this post-suit increase. (Doc. 57 at 11). The submission of an amended proof of loss, the defendant says, precluded it from exercising "its right to provide Plaintiff a report on the conditions that allegedly support the supplemental proof of loss" and "hindered this Defendant's right to investigate the loss." (*Id*. at 12).

     The implicit premise of the defendant's argument is that an insured is precluded from seeking in a civil lawsuit a higher figure than it presented to the insurer before filing suit. The defendant, however, cites no authority for this (or any other) proposition. Once

---

[4] The defendant improperly failed to provide pinpoint citations to any of these cases. *E.g., Coleman v. Unum Group Corp.*, 2016 WL 5539625 at *3 n.3 (S.D. Ala. 2016); *Hughes v. Houssiere, Durant & Houssiere, LLP*, 2011 WL 4807713 at *1 (S.D. Ala. 2011); *Stallworth v. Hassan*, 2008 WL 1836733 at *1 n.1 (S.D. Ala. 2008).

9

more, the Court declines to develop and support an argument on the defendant's behalf. Parenthetically, the right to provide reports on which the defendant relies applies only to pre-loss inspections of the Property that "relate only to insurability and the premiums to be charged." (Doc. 57 at 7; Doc. 57-1 at 13).

## II. Bad Faith.

Alabama law recognizes two forms of bad faith: "normal" and "abnormal." These are not two torts but a single tort "with different options for proof." *State Farm Fire and Casualty Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013). The plaintiff invokes both.

"We have repeatedly held that the tort of bad-faith refusal to pay a claim has four elements – (a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence – with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Brechbill*, 144 So. 3d at 258 (internal quotes omitted). "Thus, for the tort of bad-faith refusal to pay, requirements (a) through (d) represent the 'normal' case. Requirement (e) represents the 'abnormal' case." *Id*. (internal quotes omitted).

### A. Fall 2020.

The defendant argues that it did not deny the plaintiff's claim in late 2020 but merely "closed the file" when the plaintiff failed to respond to McLarens' emails stating the claim fell below the deductible. (Doc. 67 at 8). Absent reasoning or legal authority, which the defendant does not provide, the Court cannot conclude as a matter of law that the defendant did not deny the plaintiff's claim in 2020.

The *Brechbill* Court described the sort of reason envisioned by the third element as "arguable," "legitimate," and "debatable," and it also spoke of a "lawful basis" for denying a claim. 144 So. 3d at 258, 260. Since the tort's inception, these terms have

been used interchangeably.[5]  "The 'debatable reason' under [element] (c) above means an arguable reason, one that is open to dispute or question." *National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).  The defendant asserts that McLarens' assessment, following an inspection of the Property, that the amount of loss fell below the deductible constitutes an arguable reason for denying the claim, especially given the plaintiff's failure to respond to McLarens' invitation to submit materials indicating a higher figure.  (Doc. 57 at 15).  The plaintiff offers no disagreement with this unremarkable proposition.

The plaintiff questions the thoroughness of McLarens' investigation, (Doc. 66 at 6), but only in connection with its contract claim.  (*Id*. at 14).  Even had the plaintiff done so in order to support an abnormal bad faith claim, the effort would fail.  The *Brechbill* decision makes clear that the conditional fifth element is a potential substitute for the fourth element, but not for the third element, which the plaintiff must prove in every case. "Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial …."  144 So. 3d at 258.  "The existence of an insurer's lawful basis for denying a claim is a *sufficient condition* for defeating a claim that relies upon the fifth element of the insurer's intentional or reckless failure to investigate."  *Id*. (emphasis in original).  Thus, "[a] bad-faith-refusal-to-investigate claim cannot survive where the trial court has expressly found as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied."  *Id*. at 260.  "[R]*egardless of the imperfections of* [*the insurer's*] *investigation*, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim."  *Id*. at 259 (emphasis added).

---

[5] *See Gulf Atlantic Life Insurance Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981) ("'No lawful basis' … means that the insurer lacks a legitimate or arguable reason for failing to pay the claim. [citation omitted]  That is, when the claim is not fairly debatable, refusal to pay will be bad faith ….").

### B. Fall 2022.

The defendant assumes that the plaintiff's submission of a proof of loss in September 2022 could constitute a re-submission of its claim. The defendant, however, says it has not denied the claim. (Doc. 57 at 14-15). It is uncontroverted that the defendant tasked an engineering firm and building consultant with investigating the loss, that the defendant was still awaiting the building consultant's report when the plaintiff filed suit, and that the defendant's investigation of the claim was ongoing. The plaintiff itself insists that investigating its claim "is a lengthy and challenging process." (Doc. 66 at 15). Nothing in these facts remotely suggests a denial of the plaintiff's claim. The plaintiff neither identifies any evidence that the defendant actually denied its claim at any time after presentation of the proof of loss nor asserts that there has been a constructive denial of the claim. *See generally State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 317 n.6 (Ala. 1999) (addressing actual and constructive denials).

As to the third element, the plaintiff asserts only that the building consultant's report indicates damages of almost $620,000, or almost $50,000 over the deductible, yet the defendant, without an arguable reason, did not pay the plaintiff this modest sum. (Doc. 66 at 21-22).[6] As the defendant points out, (Doc. 67 at 9), this report at most set up a conflict with the McLarens report, which continued to provide an arguable basis for non-payment.

The plaintiff focuses its attention on what it believes is evidence of the fifth element, *i.e.*, the abnormal case. (Doc. 66 at 17-21). The short answer is, without both a denial and the lack of an arguable reason for a denial, the remaining elements of a bad faith claim are irrelevant. In any event, the plaintiff's arguments regarding the fifth element lack merit.

> In the 'abnormal' case, bad faith can consist of: 1) intentional or reckless failure to investigate a claim, 2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, 3) the manufacture of a debatable reason to deny a claim, or 4) reliance on an ambiguous portion

---

[6] The plaintiff neglected to present evidence of the report's contents, but the defendant appears to accept the accuracy of the plaintiff's figures.

of a policy as a lawful basis for denying a claim.

*Jones v. Alfa Mutual Insurance Co.*, 1 So. 3d 23, 32 (Ala. 2008) (internal quotes omitted).

The plaintiff first asserts that the defendant "stopped investigating or adjusting" its claim "when litigation was instituted." (Doc. 66 at 17). The evidence on which the plaintiff relies states only that no inspections have occurred since January 2023, not that all investigation or adjusting was halted in December 2022. (*Id*. at 16; Doc. 66-3 at 12). At any rate, the plaintiff does not characterize this alleged cessation of activity as a "failure to investigate" that could support the fifth element, nor does it identify any further investigation the defendant should have, but did not, undertake.

In a related vein, the plaintiff notes that the defendant did not respond to its October 2023 amended proof of loss. (Doc. 66 at 16-17; Doc. 66-2 at 3). This, it says, violated the Policy, which provides that "[w]e will give notice of our intentions within 30 days after we receive the sworn proof of loss." (Doc. 57-1 at 24). A failure to respond is not a failure to investigate, and the plaintiff alleges no such failure.

Next, the plaintiff argues that when its lawyer asked to see the claim file, the defendant "refused to provide even basic claim correspondence or its own estimates." (Doc. 66 at 17). The brief, opaque deposition excerpt on which the plaintiff relies fails to identify the timing, background, or content of any such request, (Doc. 66-4 at 5), rendering the allegation incapable of assessment. Nor does the plaintiff identify any legal requirement that an insurer divulge its claim file to the insured or its lawyer. Finally, the plaintiff does not explain how such a failure could fall within any of the four categories of abnormal bad faith recognized by Alabama law.

The plaintiff complains that the defendant has no written policies or procedures regarding claims handling. (Doc. 66 at 18). This proposition is supported by the evidence, (Doc. 66-3 at 2-3; Doc. 66-4 at 3), but it does not of itself support a claim of abnormal bad faith, because the absence of such written policies or procedures does not of itself indicate a failure to investigate or any other recognized ground of such a claim.

The plaintiff's final and primary argument asserts that the defendant has improperly relied on a Policy provision prohibiting any "legal action against" the

13

defendant "unless … [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." (Doc. 57-1 at 11).  According to the plaintiff: such a provision is unenforceable under Alabama law; the defendant knew this; the defendant nevertheless did not tell plaintiff's counsel the provision was unenforceable; the defendant instead talked counsel into a 90-day tolling agreement, lasting into December 2023; when that agreement neared its expiration, the defendant offered another tolling agreement, but without offering the plaintiff any consideration (the unenforceability of the Policy provision rendering an extension of time "worthless"); the plaintiff declined to agree to another extension and instead filed suit in December 2023; and the defendant now argues, as addressed in Part I.B, that the action should be dismissed because the plaintiff filed suit prematurely.  The plaintiff concludes that the defendant has manufactured a debatable reason to deny the plaintiff's claim and is relying on an ambiguous policy provision as its debatable reason.  (Doc. 66 at 17-18, 19-21).

The Policy provision is not ambiguous. It means exactly what it says, as plaintiff's counsel himself expressly recognized at the time.  (Doc. 66-6 at 3).  Nor was plaintiff's counsel (a lawyer eleven years out of law school) hoodwinked by the defendant's claim specialist (repeatedly dismissed by the plaintiff as a novice only four years out of college) regarding the enforceability of the provision.  On the contrary, plaintiff's counsel noted in his initiating communication with the defendant that the provision "is contrary to and unenforceable under Alabama law." (*Id.*).[7]  Nor did the defendant talk the plaintiff into a tolling agreement; instead, it was plaintiff's counsel, in that same initial communication, who proposed such an agreement. (*Id.*).  Finally, the defendant did not force or trick the plaintiff into filing suit; rather, the plaintiff, for reasons it has failed to place in the record, declined the defendant's invitation to extend the tolling agreement and instead filed this lawsuit.  (Doc. 66-7 at 2).  As addressed in Part I.B, the defendant has failed to demonstrate that this action was filed fatally prematurely but, even had it done so, it did

---

[7] The plaintiff recognizes that the provision ineffectually seeks to shorten Alabama's six-year statute of limitations for contract actions and its two-year (from accrual) statute of limitations for bad faith actions.  (Doc. 66 at 19).

14

not "manufacture" this debatable reason; instead, the plaintiff elected to file suit in December 2022 despite knowing it was under no legal compulsion to do so.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted** with respect to the bad faith claim and **denied** with respect to the contract claim. Count II is **dismissed with prejudice**.

DONE and ORDERED this 5th day of February, 2024.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE